**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ALLAN JACKSON, JR.,** | ) | **CASE NO. 4:09CV1185** |
| | ) | |
| **Petitioner,** | ) | **JUDGE DON NUGENT** |
| | ) | |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **BENNIE KELLY, WARDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Allan Jackson, Jr., ("Jackson"), through counsel, challenges the

constitutionality of his conviction in *State v. Jackson*, Trumbull County Court of Common Pleas

Case No. 2006CR005. Jackson filed his Petition for a Writ of Habeas Corpus (Doc. No. 1)

pursuant to 28 U.S.C. § 2254 on May 22, 2009. On September 14, 2009, Warden Bennie Kelly

("Respondent") filed his Answer/Return of Writ. (Doc. No. 5.) Jackson filed both a Traverse

and a supplemental brief. (Doc. Nos. 9, 13.) This matter is before the undersigned Magistrate

Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that

Jackson's Petition be denied.

## I. Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate

court summarized the facts underlying Jackson's conviction as follows:

> {¶ 3} Appellant ("Mr. Jackson"), was indicted on January 18, 2006, for five
> counts of rape, in violation of R.C. 2907.02(A)(1)(b) & (B), a first degree felony
> and five counts of pandering obscenity involving a minor, in violation of R.C.
> 2907.321(A)(1) & (C), felonies of the second degree. Mr. Jackson pled not guilty
> at his arraignment on January 19, 2006, and his bond was set at $1,000,000 cash
> or surety.

> {¶ 4} Subsequently, Mr. Jackson filed a motion to suppress on April 4, 2006,
> alleging that the cell phones, which were in his possession when he was arrested

and contained pornographic images of the minor child, "M.L.," were impermissibly searched prior to obtaining a search warrant. On the same day he also filed a motion to dismiss counts six through ten of the indictment. The court held a suppression hearing on April 13, 2006. The parties were given leave to file supplemental briefs, and on April 17, 2006, before the jury trial began, the court denied Mr. Jackson's motion to suppress finding that the contents of the cell phones would have eventually been discovered. The court also denied Mr. Jackson's motion to dismiss the five counts of pandering in sexually oriented material with a minor.

{¶ 5} On April 13, 2006, Mr. Jackson filed a subpoena duces tecum for the Trumbull County Children Services Board ("TCCSB") in order to examine M.L.'s case file. TCCSB, in turn, filed a motion to quash the subpoena duces tecum on April 14, 2006. On April 17, 2006, as the jury trial was just beginning, Mr. Jackson filed a motion to show cause to compel TCCSB to comply. On April 17, 2006, the court denied the motion to quash and ordered the board to deliver the subpoenaed records to the court for an in camera inspection. The records arrived the next day, and the court reviewed the records in camera, finding that the file contained nothing of an exculpatory nature with the exception of two items, and so advised both the state and defense counsel. The court then determined that those two items relating to an unsubstantiated allegation not made by M.L. that when she was two years old her five-year-old brother may have attempted to have oral sex or engage in some sort of sexual activity, were not relevant for purposes of this trial. On April 19, 2006, Mr. Jackson proffered this information on the record.

{¶ 6} A jury trial was held on April 17, 18, and 19 of 2006. The state presented the testimony of five witnesses: Officer Sherrey McMahon, Detective Michael Krafcik, both of the Warren City Police Department; Rhonda Avery, R.N. for the TCCSB; "H.L.," the victim's mother; Dr. Jason Kovalcik ("Dr. Kovalcik") a physician from the Tri-County Children's Advocacy Center; Special Agent Mark Bodo of the Department of Homeland Security; Special Agent Lee Lerussi of the Ohio Bureau of Criminal Identification and Investigation; and M.L., the victim. The state also offered into evidence a video and photographs taken from Mr. Jackson's cell phones. Mr. Jackson testified in his defense.

{¶ 7} The evidence reflects that on December 27, 2005, M.L., and her mother, H.L. went to the Warren City Police Department to report that M.L. was sexually assaulted by her sister's ex-boyfriend, Mr. Jackson, who was also considered a family friend. Specifically, Mr. Jackson forced M.L. to engage in acts of oral sex, which he would then photograph with his cell phones.

{¶ 8} Officer Sherrey McMahon ("Officer McMahon") took the initial incident report and advised H.L. to take M.L. for a medical examination at Trumbull Memorial Hospital to investigate for possible evidence. H.L. relayed to Officer McMahon that on the night after Christmas, her sister, Misty, had alerted her to a weird feeling that she had been having that something was going on between Mr. Jackson and M.L. H.L. questioned M.L., who grew very upset. After more questioning, M.L. told her that Mr. Jackson had sexually assaulted her by forcing her to perform oral sex on him. After ejaculating in her mouth, she would spit it out, and Mr. Jackson would toss her $5.00 and say, "Thanks for the hookup."

{¶ 9} The victim was twelve years old and in seventh grade at the time. Mr. Jackson had been involved with Misty for the past sixteen years and resided in the same home as M.L. from time to time. Misty, H.L., and their children, all resided

2

in the home, with their mother, the owner of the home. Mr. Jackson first assaulted M.L. when he was still residing with them. He would frequently watch the children and on one such occasion he blindfolded all the children and told them that he would stick something in their mouths and they would guess what it was. The first two children exclaimed that they tasted whip cream. However, M.L. said that whatever was stuck in her mouth was slimy and nasty and did not taste like whip cream. Mr. Jackson assaulted M.L. approximately four or five more times before he moved out, each time blindfolding her and forcing her to engage in acts of oral sex in which he would ejaculate in her mouth. Mr. Jackson moved out around July 5, 2005. When the occasion would arise on Mr. Jackson's visits with Misty, he would assault M.L. in the same fashion. The last of these incidents occurred in December of 2005. From the dated photographs taken from Mr. Jackson's cell phones, Mr. Jackson last assaulted M.L. on December 24, 25, and 26 of 2005. However on these occasions, he took incriminating photographs of M.L. with his penis in her mouth. He forced her to look up at the camera and told her to smile. On December 26, 2005, he dragged M.L. into the basement laundry room, took her blindfold off, and told that he would hurt her the way she used to beat up her aunt if she told anyone. He made her smile at the camera, ejaculated into her mouth, and told her that he was going to throw her clothes away. She spit his semen onto the floor and Mr. Jackson threw her five dollars. M.L. estimated that Mr. Jackson has assaulted her at least twenty-five times.

{¶ 10} Detective Michael Krafcik ("Detective Krafcik") was assigned to the case on December 28, 2005, the day after H.L. had discovered M.L. was being sexually assaulted and had made a report to the police. At approximately 10:30 a.m. Detective Krafcik, Elizabeth Lewis, a sexual assault investigator from TCCSB, and Sergeant Merrick went to the residence of the victim, where they met with M.L., H.L., and M.L.'s grandmother, who as the owner of the house granted them permission to enter and search.

{¶ 11} The following day, December 29, 2005, Detective Krafcik sought and was issued a warrant for Mr. Jackson's arrest. Subsequently, on December 30, 2005, Mr. Jackson was arrested at the Pit-Stop Drive-Thru gas station at the intersection of Youngstown Road and Kenilworth in Warren.

{¶ 12} Two cell phones were found on his person, both of which met M.L.'s and her family's description of the phones. M.L. had told the police Mr. Jackson took photographs of her with his two cell phones and that he always kept them with him. However, before obtaining a search warrant to search the contents of the phones, when Mr. Jackson was arrested, the police examined the phones and discovered the pictures of the minor with a penis in her mouth. The police then obtained a search warrant on January 4, 2006, to search the contents of the two cell phones further.

{¶ 13} Special Agent Lee Lerussi testified that the six images were taken from Mr. Jackson's cell phones, one on December 24, 2005, two on December 25, 2005, two on December 26, 2005, and one undated and unknown.

{¶ 14} Mr. Jackson testified in his own defense. He denied engaging in oral sex with M.L. Further, he denied taking any of the pictures with his cell phone. Mr. Jackson testified that on the dates of the last few incidents he did leave the cell phones unattended at the house when he left for brief periods of time. He then testified that he was present at the home when the pictures were taken, as evidenced by the time and date stamp on the photographs. The court overruled Mr. Jackson's renewed Crim.R. 29 motion for acquittal, finding that the state had

3

submitted sufficient evidence on all the counts charged.

{¶ 15} The jury returned a verdict of guilty on April 19, 2006, for all counts of the indictment, finding him guilty of five counts of rape and five counts of pandering obscenity involving a minor.

{¶ 16} Mr. Jackson renewed his Crim.R. 29 motion for acquittal, filing it on April 27, 2006, which the court subsequently denied on June 1, 2006. Mr. Jackson then filed a motion for new trial on June 14, 2006, which the court denied in a judgment entry filed July 27, 2006. The court had already orally denied the motion at the sexual predator status conference that was held on July 6, 2006. Another sexual predator status conference was held between the parties and the court on September 7, 2006, at which time the court set Mr. Jackson's sexual predator hearing for October 13, 2006.

{¶ 17} Before sentencing Mr. Jackson at a hearing on October 26, 2006, the court informed Mr. Jackson that the court found him to be a sexual predator. The court then deferred the sentencing hearing until the following day, October 27, 2006, at which time Mr. Jackson was sentenced to five consecutive life sentences for each count of rape and five two year sentences for each of the five counts of pandering obscenity involving a minor. However, one of the two year sentences was ordered to be served consecutively to the life sentences, while the remaining four were to be served concurrent to the overall consecutive sentence. Mr. Jackson was then notified of his duties to register as a sexual predator and that he may be subject to post-release control after his release. Mr. Jackson filed a timely notice of appeal on December 1, 2006, appealing his judgment entry of sentence of November 3, 2006.

*State v. Jackson,* 2007 WL 4481412, *1-4, Case No. 2006-T-0123 (Ohio App. 11 Dist. Dec. 21, 2007).

## II.  Procedural History

### A.  Conviction

On January 18, 2006, the Trumbull County Grand Jury indicted Jackson on five counts of rape and five counts of pandering obscenity, all involving a minor under age thirteen.  (Doc. No. 5-1, Exh. 1.)  Jackson filed a motion to suppress all evidence obtained as a result of a search warrant issued on January 4, 2006, involving photographs residing on his confiscated cell phones.  After a hearing, the court denied the motion.  (Doc. No. 5-1, Exhs. 2-4, Tr. 47-48.)

In April, 2006, a jury found Jackson guilty on all counts.  (Doc. No. 5-1, Exhs. 5-14.)  In June, 2006, Jackson, relying on purported new evidence, requested a new trial.  (Doc. No. 5-1, Exh. 15.)  The trial court declined to grant Jackson's request.  (Doc. No. 5-1, Exh. 17.)

In a judgment journalized on November 3, 2006, Jackson was sentenced to consecutive life terms on counts one through five and two years on each of counts six through ten.  (Doc. No.

4

5-1, Exh. 18.)  Count six was ordered to be served consecutive to the life sentences, while the remaining four were to be served concurrent to each other and concurrent with the sentences imposed in counts one through six.  *Id.*

### B.  Direct Appeal

Jackson, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eleventh District ("state appellate court") raising the following assignments of error:

.

    1.    The trial court erred in denying appellant's motion to suppress evidence obtained by the state.

    2.    The trial court erred and abused its discretion by not granting appellant's motion for a new trial.

    3.    The trial court erred and abused its discretion by not allowing a file from the Children Services Board into evidence.

    4.    The Appellant's convictions are against the manifest weight of the evidence.

(Doc. No. 5-1, Exh. 19-20.)  On December 26, 2007, the state appellate court affirmed.  (Doc. No. 5-1, Exh. 22.)

On February 11, 2008, Jackson, through counsel, filed a timely Notice of Appeal in the Ohio Supreme Court setting forth the following propositions of law:

    1.    A trial court commits reversible error by denying a motion to suppress evidence where a defendant is searched and evidence is seized by police without a warrant.

    2.    A trial court commits reversible error when it does not grant a defendant's motion for new trial when new evidence is found that creates reasonable doubt that the defendant committed the crime accused.

    3.    A trial court abuses its discretion by not allowing evidence from a Children Services Board file that supports the contention that someone other than a defendant committed the crime.

    4.    A trial court's adjudication of a criminal defendant as a sexual predator is against the manifest weight of the evidence where the record reveals that all current psychological tests indicate, at worst, a 36% chance of the defendant re-offending.

    5.    The Appellant's convictions are against the manifest weight of the evidence.

(Doc. No. 5-1, Exhs. 23-24.)  On June 4, 2008, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 5-1, Exh. 26.)

5

### C.  Federal Habeas Petition

Jackson, through counsel, filed the instant Petition for a Writ of Habeas Corpus asserting the following grounds for relief:

> **Ground One**: The trial court erred and violated Petitioner's constitutional rights by denying a motion to suppress evidence where a defendant is searched and evidence is seized by police without a warrant.
>
> **Ground Two**: The trial court erred and violated Petitioner's constitutional rights by denying a motion for new trial when new evidence is found that creates reasonable doubt that the defendant committed the crimes accused.
>
> **Ground Three**: The trial court erred and violated Petitioner's constitutional rights by not allowing evidence from a Children Services Board file that supports the contention that someone other than a defendant committed the crimes.
>
> **Ground Four**: Petitioner's convictions are constitutional violations as they are against the manifest weight of the evidence.

(Doc. No. 1.)  Respondent argues that these grounds are either noncognizable in federal habeas, procedurally defaulted, or without merit.

### III.  Cognizability of Grounds One, Three and Four

### A.  Application to Ground One

In ground one, Jackson argues that the state courts improperly applied the "inevitable discovery rule," finding that the photographs on his cell phones would have been lawfully discovered despite an initial search being illegally conducted.  (Doc. No. 9 at 10.)  Even if the photographs would have been "discovered," Jackson argues that they were "fruits of a poisonous tree" and the trial court should have granted his motion to suppress.  *Id*.  Respondent avers that this ground is noncognizable in federal habeas relief.

Generally, a writ of habeas corpus is not available on the ground that a petitioner's Fourth Amendment rights were violated if the petitioner had an opportunity to present the Fourth Amendment claim in state courts.  *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n. 5 (2007); *accord Ewing v. Ludwick*, 134 Fed. Appx. 907, 911 (6th Cir. 2005).  The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. The Sixth Circuit has found that the determination as to whether a petitioner has had "an opportunity for full and fair litigation of a Fourth Amendment claim" requires a federal district court to make two separate inquiries. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). First, the court should ascertain "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Id*. Second, the court must ascertain "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id*.

Because the Sixth Circuit already has determined that "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is . . . clearly adequate," this Court's role is confined to the second inquiry – namely whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *Id*.; *accord Bridges v. Bradshaw*, 2006 U.S. Dist. LEXIS 96749 (N.D. Ohio 2006).

Jackson's ability to present his Fourth Amendment claim was not frustrated through a failure in Ohio's review process. In response to Jackson's motion to suppress, the court held a suppression hearing, where Jackson was given an opportunity to cross-examine the state's witness and present evidence. (Doc. No. 5-2, suppression transcript.) Jackson subsequently raised the trial court's unfavorable ruling in his direct appeal. (Doc. No. 5-1, Exh. 20.) The state appellate court concluded that the motion to suppress was properly denied:

> {¶ 25} In his first assignment of error, Mr. Jackson contends that the trial court committed reversible error by denying his motion to suppress the photographs of the victim that were found in his cell phones. Specifically, Mr. Jackson argues that the contents of the cell phones were illegally seized without a proper search warrant, and thus they should have been suppressed.

> {¶ 26} "At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." *State v. McGary*, 11th Dist. No.2006-T-0127, 2007-Ohio-4766, ¶ 20, *citing State v. Molek*, 11th Dist. No.2001-P-0147, 2002-Ohio-7159, ¶ 24, *citing State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; *see also, State v. Mustafa* (Dec. 14, 2001), 11th Dist. No.2000-P-0116, 2001 Ohio App. LEXIS 5661, 3-4, 2001 WL 1602127. Thus, "[a]n appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence." *Id. citing State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498; *City of Ravenna v. Nethken*, 11th Dist. No.2001-P0040, 2002-Ohio-3129, ¶ 13. "After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether

7

or not the applicable legal standard has been met." *Id*.

{¶ 27} "The exclusionary rule operates to exclude evidence obtained by the government in violation of the United States Constitution." *State v. Helton*, 160 Ohio App.3d 291, 826 N.E.2d 925, 2005-Ohio-1789, ¶ 14, *citing State v. Harden* (May 26, 2000), 11th Dist. No. 98-L-234, 2000 Ohio App. LEXIS 2274, 11, 2000 WL 688727. "The purpose of this rule is to deter police misconduct. Id. Of course, there are the competing concerns that the guilty are punished and the criminal justice process is not subverted through the exclusion of trustworthy, relevant evidence." *Id., citing Hayden* at 11-12.

{¶ 28} "The rule bars not only the admission of evidence obtained as a direct result of a constitutional violation, * * * but also evidence obtained as an indirect result of the constitutional violation." *Id*. at ¶ 15, *citing Hayden* at 12. "The latter type of evidence is commonly referred to as the 'fruit of the poisonous tree.' " *Id*.

{¶ 29} "The United States Supreme Court has created three exceptions to the exclusionary rule for evidence obtained as an indirect result of a constitutional violation." *Id.* at ¶ 16, *citing Hayden* at 12. "These are (1) the independent source doctrine, (2) the inevitable discovery doctrine, and (3) the attenuation doctrine." *Id*.

{¶ 30} In this case, the trial court determined that although the officer impermissibly examined the contents of the cell phones upon Mr. Jackson's arrest effected pursuant to a proper search warrant on December 30, 2006; the contents of the cell phones would have been inevitably discovered, since a proper search warrant was later issued on January 4, 2006. Thus, the exclusionary rule did not apply to the officer's illegal search after the phones were properly seized since the contents of the phones were admissible under the inevitable discovery doctrine and the subsequent, lawful search.

{¶ 31} "The ultimate or inevitable discovery exception to the Exclusionary Rule is hereby adopted so that illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *Id*. at ¶ 17, *citing State v. Perkins* (1985), 18 Ohio St.3d 193, 480 N.E.2d 763, at syllabus. "This doctrine applies if the prosecution proves by a preponderance of the evidence that the police would have ultimately discovered the illegally obtained evidence apart from the unconstitutional conduct." *Id., citing State v. Fernandez*, 11th Dist. No.2001-L-162, 2002-Ohio-7140, ¶ 34, *citing State v. Seals* (Dec. 30, 1999), 11th Dist. No. 98-L-206, 1999 Ohio App. LEXIS 6398, 1999 WL 1314662.

{¶ 32} We agree with the trial court that under the circumstances presented by the facts of this case the contents of the cell phones would have been inevitably discovered as the police proceeded with their investigation. This is not a case where the police made an illegal seizure, but rather, the cell phones were seized incident to a lawful arrest. They were identified prior to Mr. Jackson's arrest as containing evidence of the alleged crimes by the victim and her family, and they were identified by the victim and her family as always being on Mr. Jackson's person. Indeed, Detective Krafcik testified that the officers wanted to arrest Mr. Jackson while he was carrying the phones on his person. However, once the cell phones were lawfully in police custody, there was some debate as to whether the officers could proceed to examine the contents of the phones.

{¶ 33} The officers then consulted with the city prosecutor's office while the phones were in custody prior to the illegal search as to whether they could view the contents of the phone without a search warrant. The officers were advised that they could "go ahead at least turn on, look at them and proceed from that point." Upon determining that the cell phones did contain the evidence they sought, the officers obtained a proper search warrant from the court on January 4, 2006, to further examine and extract the contents of the phone. This is not a case where the police illegally searched and seized an item, but rather, the phones were already in lawful custody and a search warrant was pending. Most importantly, the officers had grounds for the issuance of a warrant to search the phones and had taken steps to procure a warrant.

{¶ 34} "Pursuant to a search incident to arrest, the police may conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." *State v. Eckliffe*, 11th Dist. No.2001-L-105, 2002-Ohio-7136, ¶ 17, *citing State v. Jones* (1996), 112 Ohio App.3d 206, 215, 678 N.E.2d 285, *citing U.S. v. Robinson* (1973), 414 U.S. 218.

{¶ 35} While we do not condone the officer's premature search of the contents of the cell phones in this case, it has been "established that the evidence would have been inevitably discovered during the course of a lawful investigation." *Id., citing State v. Taylor* (2000), 138 Ohio App.3d 139, 150, 740 N.E.2d 704, *citing State v. Perkins* (1985), 18 Ohio St.3d 193, 196, 480 N.E.2d 763. Here, the contents of the cell phones would have been discovered after the officers had obtained a proper search warrant, which indeed they did obtain on January 4, 2006.

*State v. Jackson,* 2007 WL 4481412, * 4 -6  (Ohio App. 11th Dist. Dec. 21, 2007).  Lastly,

Jackson petitioned the Supreme Court of Ohio to review the court of appeals ruling.  (Doc. No.

5-1, Exh. 24.)  Jackson had a full and fair opportunity to present his claim in state court.

Jackson also contends in his supplemental traverse that the Ohio Supreme Court recently

addressed the issue of cell phone searches and held that "the warrantless search of data within a

cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the

search is unnecessary for the safety of law-enforcement officers and there are no exigent

circumstances."  *State v. Smith*, 2009 WL 4826991 *7, 2009-Ohio-6426 Dec. 15, 2009.  Jackson

contends that applying *Smith*, the pictures from the cell phones should have been suppressed.

Jackson's argument that *Smith* prohibited the search of his cell phones without a warrant

is futile.  First, *Smith* was not the law at the time of the search and its holding cannot be applied

retroactively.  *See Teague v. Lane*, 489 U.S. 288 (1989) (New criminal rules generally do not

have retroactive application to criminal cases pending on collateral review.)  Second, federal

habeas relief is based on United States Supreme Court precedent, not state law.  Lastly, *Smith* is

9

distinguishable as it did not involve the inevitable discovery rule, the application of which is always based upon an initial unlawful seizure of the subject evidence.  *Smith*, even if controlling, would not change the instant ruling.

### B. Application to Ground Four

In ground four, Jackson raises a manifest weight argument.  Respondent again argues that such relief is not available in federal habeas.

The distinction between a claim that a conviction is against the manifest weight of the evidence and a claim that the conviction is not supported by sufficient evidence is a critical one for purposes of habeas review.  Sufficiency of the evidence refers to the due process requirement that there be enough evidence introduced for a rational trier of fact to find each of the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Conversely, a manifest weight of the evidence claim is based on a state law concept that is both quantitatively and qualitatively different from a constitutional due process sufficiency of the evidence standard.  *See Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Under Ohio law, a claim that a verdict was against the manifest weight of the evidence requires the appellate court to act as a thirteenth juror and to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, resolve conflicts in the evidence, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. Ohio 1983); *cf. Tibbs*, 457 U.S. at 42.  However, the test for determining whether sufficient evidence was admitted to support a verdict requires the appellate court to view the evidence, and inferences to be drawn therefrom, in the light most favorable to the prosecution.  Unless the court finds thereafter that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, it must uphold the conviction.  *See Jackson*, 443 U.S. at 319.

Occasionally, a petitioner presents manifest weight grounds, but argues sufficiency.  Here, Jackson is represented by counsel who explicitly insists on his manifest weight argument.  (Doc. No. 9 at 11-13.)  Manifest weight claims, however, are not cognizable on federal habeas

10

review.  *See, e.g.*, *Nash v. Eberlin*, 258 Fed. Appx. 761, 765 fn. 4 (6th Cir. 2007); *accord Hess v. Eberlin,* 2006 WL 2090093 at *6 (S.D. Ohio 2006).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Jackson's conviction was against the manifest weight of the evidence.  *See Hess* at *7.

For the foregoing reasons, grounds one and four are not cognizable in federal habeas review.

### IV.  Exhaustion and Procedural Default

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice.  *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.  *Id.*

 Second, a petitioner may procedurally default a claim by failing to raise a claim in state

11

court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-2 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his or her claim.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim:  "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the

12

state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

A petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

### A.  Application to Ground Two

In ground two, Jackson asserts that the trial court violated his constitutional rights when it denied his motion for a new trial based upon newly discovered evidence. The new evidence consisted of a photograph of a couch located in the home where the assault occurred. Jackson argues that the photograph depicts the couch in a different location than where the victim had testified, thus calling into question the victim's credibility. Respondent argues that in Jackson's direct appeal he did not implicate any federal constitutional rights, but instead relied upon state law to set forth an "abuse of discretion" standard, thereby not meeting the *Blackmon* guidelines.

13

(Doc. No. 5 at 11.)

Upon review of the record, it is clear that Jackson did not provide the state courts an opportunity to rule on a federal due process violation as his direct appeal was based solely on state law.  The state appellate court applied Ohio law and affirmed the trial court as follows:

{¶ 38} In his second assignment of error, Mr. Jackson contends that the trial court erred in denying his motion for new trial. Specifically, Mr. Jackson argues that the trial court abused its discretion in denying a new trial premised upon discovered evidence of a photograph of a couch. For the following reasons, we find this contention to be without merit.

{¶ 39} "A motion for a new trial, made pursuant to Crim.R. 33, is addressed to the sound discretion of the trial court." *State v. Valentine, III*, 11th Dist. No.2002-P-0052, 2003-Ohio-2838, ¶ 14, *citing State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph ten of the syllabus. "A trial court's ruling on a Crim.R. 33(B) motion will not be disturbed absent an abuse of that discretion." *Id*. Further, "[t]he discretionary decision to grant a motion for a new trial is an extraordinary measure which should be used only when the evidence presented weighs heavily in favor of the moving party." *Id., citing State v. Otten* (1986), 33 Ohio App.3d 339, 515 N.E.2d 1009.

{¶ 40} "In order to obtain a new trial based upon newly discovered evidence, a defendant must show that 'the new evidence: (1) discloses a strong possibility that it will change the result if a new trial is granted; (2) was discovered after the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to the former evidence; and (6) does not merely impeach or contradict the former evidence.'" *Id*. at ¶ 11, 515 N.E.2d 1009, *citing State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus.

{¶ 41} We find no abuse of discretion in the trial court's denial of Mr. Jackson's motion for new trial based on newly discovered evidence. Mr. Jackson argues that a picture, found by his mother after trial when she was going through his belongings is evidence that could be used to impeach M.L.'s testimony. The picture is of two women, one woman is sitting and looking to her right, while the other woman is feeding a baby. Mr. Jackson contends this picture contradicts M.L.'s testimony that the incidents occurred in the basement since the pictures taken on his phone may have had this couch in the background.

{¶ 42} Mr. Jackson has failed to evidence that this photograph warrants the extraordinary measure of a new trial. Not only does this picture fail every prong of the *Petro* test since it is not evidence of substance that would change the outcome of trial, we also note that there has been no showing that in the exercise of due diligence this photograph could not have been discovered prior to trial. Further, the picture is not material to the issues, and most fundamentally, the photograph attempts to merely impeach the former evidence, that of the testimony of M.L.

{¶ 43} Moreover, although M.L. testified that several of the incidents occurred in the basement, she also testified that they occurred in other areas of the house, such as her brother's old room. Thus, there is nothing that this photograph depicts that would warrant a new trial.

14

{¶ 44} We conclude that the trial court's denial of Mr. Jackson's motion for a new trial based on newly discovered evidence was proper.

*State v. Jackson,* 2007 WL 4481412, at *6 -7.  As Jackson argued and the state appellate court relied solely on Ohio law, the claim Jackson now raises in ground two is procedurally defaulted unless he can demonstrate cause and prejudice or actual innocence.

### B.  Cause and Prejudice

Under the fourth prong of *Maupin*, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Jackson makes no attempt to argue cause.

### C.  Manifest Injustice

Jackson does assert that he is actually innocent; and, therefore, the Court will analyze whether his procedural default should be excused to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – Petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).  The threshold for "manifest injustice" is very high.  In *Murray*, the Supreme Court concluded that certain circumstances may warrant excusing of procedural default "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Only then may a court grant a petition where the claim otherwise is barred.  *Id.*

Here, Jackson's claim does not meet the threshold for "manifest injustice."  He relies only on the photograph of a couch which had been considered by both the trial and the state appellate courts.  Jackson also attempts to bolster his claim by arguing that other evidence presented at trial was contradictory and unreliable.  For example, the victim testified that she spit semen on the floor or in her clothing, but when swabs were taken for DNA evidence, none was

15

found.  (Doc. No. 9 at 10.)   Jackson also points to his testimony that he did not have custody of his two cell phones at all times on the night of the alleged incident and did not take pornographic pictures of the victim.  *Id*.  He argues that there were other people at the house during the time frame of the alleged incident.  *Id*.  He also argues that there was evidence that the victim's brother could have been guilty of the assault.  (Doc. No. 9 at 15.)  Lastly, he argues that pictures taken of his penis show a distinct mark or mole, which is not seen on the penis in the pictures taken from the cell phone. (Doc. No. 9 at 13.)   The prosecution speculated that the mark did not show up on a picture taken with a cell phone.  *Id*.  Jackson claims that these arguments show he was wrongfully convicted.

However, other than the photograph, none of these allegations involved new evidence. He presented these claims to the state appellate court in his manifest weight assignment of error. The appellate court concluded that the evidence at trial overwhelmingly supported a finding of guilty:

> {¶ 88} Mr. Jackson argues that the testimony introduced at trial is inconsistent because there was testimony that the clothes M .L. was wearing on the date of the last incident were thrown away. Mr. Jackson argues that this testimony is inconsistent because he has a picture of M.L. wearing that clothing on the date of the incident. Mr. Jackson fails to show us how this is inconsistent with the testimony that the clothes were later thrown away. We would assume that M.L. would be wearing the clothes that were later thrown away on the day of the incident.

> {¶ 89} Mr. Jackson next argues that the testimony is inconsistent with the verdict because M.L. testified that she spit his semen on the laundry room floor although no DNA was later found upon a police search of the area. However, there was testimony that the laundry room was in complete disarray with loads of dirty laundry strewn all over the floor due to a broken laundry machine. In addition, due to the nature of the sexual crime, Dr. Jason Kovalcik testified that he would not expect to find any physical evidence of oral sex. Moreover, M.L. testified that Mr. Jackson had told her after the last incident occurred on December 26, 2005, that he was going to throw away her clothes. She also testified that she had no idea if he did indeed do so.

> {¶ 90} Next, Mr. Jackson argues that because he did not have continuous custody of his cell phones on the night of the incident this evidences that he was not the one who took pictures of the victim with a penis in her mouth with his cell phones. While Mr. Jackson testified at trial that he did not have continuous custody of the phones at all times of the night, none of his absences occurred when the pictures were taken. According to the time-stamps on all but one of the pictures, which did not contain a date, and Mr. Jackson's own testimony, he was present in the house when the pictures were taken. Thus, this argument is simply without merit.

16

{¶ 91} Finally, Mr. Jackson argues that a photograph of his penis that he entered into evidence is dispositive of his innocence since it depicts a distinct birthmark that he has had all of his life. He argues that this mark is not seen on the cell phone photographs and there was no evidence to show that the pictures on the phone showed such a mark. A comparison of these photographs reveals that this argument is also without merit. The cell phone pictures are not as clear as the photograph Mr. Jackson admitted into evidence and one would not be able to distinguish a mark if one was present. Further, all of these pictures were submitted to the jury.

{¶ 92} A review of the evidence in this case reveals that the manifest weight of the evidence weighs heavily in a finding of guilt. The testimony and evidence that the state presented at trial cannot lead us to conclude that the jury lost its way or created a manifest miscarriage of justice. Rather, the evidence reveals that Mr. Jackson forced a young girl to engage in acts of oral sex, and further demeaned her by photographing her while the act was occurring.  The state introduced the testimony of the victim and photographs that were taken from Mr. Jackson's personal cell phones.  Although Mr. Jackson testified in his own defense and argued that he did not take the pictures, he introduced no evidence to support his assertions.  He denied the charges against him and that he took the pictures that were taken with his phones.  Although he testified that he left the house on December 24, 2005 and December 26, 2006 [sic], and that his cell phones were unattended, his own testimony clearly established that he returned or was present at the home when all of the pictures were taken.

*State v. Jackson,* 2007 WL 4481412, at *13.

Further, as Respondent points out, the photograph itself has no bearing on any of the essential elements of the crimes charged.  Nor could it have been used to effectively impeach the victim, as she testified that rapes occurred multiple times and in various rooms of the home. (Exh. 22, Jackson, 2007-Ohio-6932, at ¶ 43.)  Other than the photograph of the couch, Jackson simply rehashes the same evidence that was raised at the state level.  Therefore, Jackson has not presented any "new" evidence to demonstrate a fundamental miscarriage of justice.

**D.  Application to Ground Three**

In ground three, Jackson argues that the trial court violated his constitutional rights when it did not admit part of a Children's Service's Bureau file that Jackson claims would have implicated the victim's brother in the sexual assault.  Respondent argues that on direct appeal Jackson did not raise this as a federal constitutional issue, arguing only abuse of discretion. (Doc. No. 5 at 12-13.)

Furthermore, alleged trial errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are typically not cognizable on habeas

17

review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  "[Q]uestions concerning the admission of evidence that may be unfairly prejudicial are committed to the sound discretion of the trial court."  *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979); *see also Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (citations omitted).  Such claims are only cognizable where the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights." *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).  As applying this test would be tantamount to a merits review, the Court elects not to address whether ground three is cognizable.

As to procedural default, Jackson did not raise the issue of whether his constitutional rights were violated when the trial court excluded a portion of the Children Services's Bureau file.  Since he did not fairly present this issue at the first opportunity as a federal constitutional claim, and Ohio law would prevent him from doing so now, it is procedurally defaulted.  Jackson has not argued cause or prejudice to excuse this default.  Further, as discussed above, his actual innocence claim fails to reach the required threshold.  This is especially true under ground three where no new evidence is advanced.

Nonetheless, had grounds two and three not been procedurally defaulted, they would fail on the merits.

## V.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable

18

> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

The Supreme Court has clarified that a State court need not cite to nor even demonstrate awareness of the clearly established Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 9 (2002).  Thus, even if the state appellate court did not cite to the clearly established Supreme

19

Court law, this habeas court must look to the result of the state court decision to determine whether the result of the appellate court analysis is contrary to or an unreasonable application of controlling law.

### A. Application to Ground Two - Denial of Motion for New Trial

Jackson argues that the trial court abused its discretion and misapplied Ohio law when it denied his motion for a new trial based on the newly discovered photograph. In his habeas Petition, he argues that this ruling and the Eleventh District Court of Appeals' affirmance denied him due process and a fair trial. Even though Jackson invokes the concept of federal due process, his claim is clearly premised on issues of state law. As state law issues are not subject to habeas review, this Court can review the denial of Jackson's motion for a new trial only for constitutional error. To establish a constitutional due process claim, Jackson must demonstrate that the trial court's denial of his motion for new trial was "so egregious" that it violated his right to a fundamentally fair trial. *See Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009), *petition for cert. filed*, 78 U.S.L.W. 3448 (U.S. Jan. 21, 2010) (No. 09-877).

As in *Pudelski*, the trial and state appellate courts' rulings here were not so egregious, because, even if the new photograph of the couch had been presented at trial, reasonable jurors could still have found him guilty. Both state courts considered the six factors that a defendant must show in requesting a new trial based upon newly discovered evidence.[1] The state appellate court found that the trial court's ruling was not an abuse of discretion. The state appellate court further concluded:

> {¶ 42} Mr. Jackson has failed to evidence that this photograph warrants the extraordinary measure of a new trial. Not only does this picture fail every prong of the *Petro* test since it is not evidence of substance that would change the outcome of trial, we also note that there has been no showing that in the exercise of due diligence this photograph could not have been discovered prior to trial. Further, the picture is not material to the issues, and most fundamentally, the

---

[1]In Ohio, the six factors are: "(1) discloses a strong possibility that it will change the result if a new trial is granted; (2) was discovered after the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to the former evidence; and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947).

photograph attempts to merely impeach the former evidence, that of the testimony of M.L.

*State v. Jackson*, 2007 WL 4481412, at *7.

This Court concludes that the trial court did not abuse its discretion or misapply Ohio law when denying Jackson's motion for a new trial. Further the denial of the motion did not infringe on Jackson's due process rights or his right to a fundamentally fair trial. The state appellate court's affirmance of the trial court's decision was in all respects reasonable and likewise did not deny Jackson a fundamentally fair trial or violate his right to due process.

### B. Application to Ground Three - Exclusion of the Children's Services Board File

This Court is limited in its review as Jackson's argument involves a state evidentiary ruling. "[A] trial judge's decision concerning the admission of evidence is a state law matter generally not subject to habeas review." *Wilson v. Parker*, 15 F.3d 682, 705 (6th Cir. 2008). *See also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.") (*quoting Cooper v. Sowders*, 83 F.2d 284, 286 (6th Cir. 1988)). A federal court may review a state-court ruling regarding the admission of evidence only "if an evidentiary ruling is 'so egregious that it results in a denial of fundamental fairness.'" *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (*quoting Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)). "[C]ourts have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990)). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Bugh* at 512 (*quoting Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).

To determine whether the admission or exclusion of evidence has resulted in a violation of due process rights, a habeas court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th

21

Cir. 1994) (*quoting Chambers v. Mississippi*, 410 U.S. 284, 297, 302 (1973)); *accord Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) ("Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor.") (*quoting Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000)).  Furthermore, constitutional trial errors are subject to harmless-error analysis.  *See Brecht v. Abrahamson*, 508 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 2d 353 (1993).

The state appellate court concluded that Jackson was not prejudiced by the exclusion of the Children's Services Board report:

> Mr. Jackson argues that the TCCSB's file on M.L., concerning an unrelated matter, which allegedly occurred ten years earlier, was a vital part of his defense. Thus, he argues that the trial court's refusal to admit the contents of the file into evidence is a clear abuse of discretion.  This contention is without merit as a review of the file reveals that it is irrelevant to the case at hand.  Specifically, the file contained an allegation that was not made by the victim and that was completely unsubstantiated.  The allegation concerned M.L.'s five-year brother who supposedly attempted to engage in oral sex with M.L., who was two years old at the time.  The allegations were unsubstantiated and the case was closed. Thus, the trial court properly excluded this evidence.
>
> Mr. Jackson argues that the unsubstantiated allegations in this file that were not made by the victim were crucial to his defense in proving that he was not the actual perpetrator.  Not only does this file have no relevance to the instant case, but in addition, we note that Mr. Jackson failed to present such a defense in any case; and that even if he did, this file still would not be relevant as it is unknown who made those allegations.

*State v. Jackson,* 2007 WL 4481412, at *8.

Jackson asserts that the ten-year old Children's Services Board record, if allowed at trial, would have changed the outcome.  Jackson argues that if the jury had heard this evidence, it may have concluded that the victim had been assaulted by her fifteen-year old brother.  The Court finds this argument unavailing.  In the end, however, the trial and state appellate courts found the record unreliable and irrelevant.   The Court concludes that the state appellate court's decision affirming the trial court's exclusion of the record is not fundamentally unfair.  Going further, this Court's own analysis as to the unsubstantiated ten-year old allegations regarding conduct between a two-year old female and five-year old male would not rise to the level of having "persuasive assurances of trustworthiness," as required by *Turpin*.  *See Turpin*, 26 F.3d at 1396.

22

## VI.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends that Jackson's Petition be denied.


 s/ Greg White
United States Magistrate Judge

Date:   April 5, 2010


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**