IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLAN JACKSON, JR., | ) | CASE NO. 4:09 CV 1185 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| BENNIE KELLY, WARDEN, | ) | Magistrate Judge Greg White |
| | ) | |
| Respondent. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Report and Recommendation issued by Magistrate Judge Greg White (Docket #14). The Magistrate Judge recommends that the Petition for Writ of Habeas Corpus filed by Petitioner pursuant to 28 U.S.C. § 2254 (Docket #1) be denied.

**Factual and Procedural Background**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

> In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Jackson's conviction as follows:
>
> > {¶ 3} Appellant ("Mr. Jackson"), was indicted on January 18, 2006, for five counts of rape, in violation of R.C. 2907.02(A)(1)(b) & (B), a first degree felony and five counts of pandering obscenity involving a minor, in

violation of R.C. 2907.321(A)(1) & (C), felonies of the second degree. Mr. Jackson pled not guilty at his arraignment on January 19, 2006, and his bond was set at $1,000,000 cash or surety.

{¶ 4} Subsequently, Mr. Jackson filed a motion to suppress on April 4, 2006, alleging that the cell phones, which were in his possession when he was arrested and contained pornographic images of the minor child, "M.L.," were impermissibly searched prior to obtaining a search warrant. On the same day he also filed a motion to dismiss counts six through ten of the indictment. The court held a suppression hearing on April 13, 2006. The parties were given leave to file supplemental briefs, and on April 17, 2006, before the jury trial began, the court denied Mr. Jackson's motion to suppress finding that the contents of the cell phones would have eventually been discovered. The court also denied Mr. Jackson's motion to dismiss the five counts of pandering in sexually oriented material with a minor.

{¶ 5} On April 13, 2006, Mr. Jackson filed a subpoena duces tecum for the Trumbull County Children Services Board ("TCCSB") in order to examine M.L.'s case file. TCCSB, in turn, filed a motion to quash the subpoena duces tecum on April 14, 2006. On April 17, 2006, as the jury trial was just beginning, Mr. Jackson filed a motion to show cause to compel TCCSB to comply. On April 17, 2006, the court denied the motion to quash and ordered the board to deliver the subpoenaed records to the court for an in camera inspection. The records arrived the next day, and the court reviewed the records in camera, finding that the file contained nothing of an exculpatory nature with the exception of two items, and so advised both the state and defense counsel. The court then determined that those two items relating to an unsubstantiated allegation not made by M.L. that when she was two years old her five-year-old brother may have attempted to have oral sex or engage in some sort of sexual activity, were not relevant for purposes of this trial. On April 19, 2006, Mr. Jackson proffered this information on the record.

{¶ 6} A jury trial was held on April 17, 18, and 19 of 2006. The state presented the testimony of five witnesses: Officer Sherrey McMahon, Detective Michael Krafcik, both of the Warren City Police Department; Rhonda Avery, R.N. for the TCCSB; "H.L,." the victim's mother; Dr. Jason Kovalcik ("Dr. Kovalcik") a physician from the Tri-County Children's Advocacy Center; Special Agent Mark Bodo of the Department of Homeland Security; Special Agent Lee Lerussi of the Ohio Bureau of Criminal Identification and Investigation; and M.L., the victim. The state also offered into evidence a video and photographs taken from Mr. Jackson's cell phones. Mr. Jackson testified in his defense.

{¶ 7} The evidence reflects that on December 27, 2005, M.L., and her

mother, H.L. went to the Warren City Police Department to report that M.L. was sexually assaulted by her sister's ex-boyfriend, Mr. Jackson, who was also considered a family friend. Specifically, Mr. Jackson forced M.L. to engage in acts of oral sex, which he would then photograph with his cell phones.

{¶ 8} Officer Sherrey McMahon ("Officer McMahon") took the initial incident report and advised H.L. to take M.L. for a medical examination at Trumbull Memorial Hospital to investigate for possible evidence. H.L. relayed to Officer McMahon that on the night after Christmas, her sister, Misty, had alerted her to a weird feeling that she had been having that something was going on between Mr. Jackson and M.L. H.L. questioned M.L., who grew very upset. After more questioning, M.L. told her that Mr. Jackson had sexually assaulted her by forcing her to perform oral sex on him. After ejaculating in her mouth, she would spit it out, and Mr. Jackson would toss her $5.00 and say, "Thanks for the hookup."

{¶ 9} The victim was twelve years old and in seventh grade at the time. Mr. Jackson had been involved with Misty for the past sixteen years and resided in the same home as M.L. from time to time. Misty, H.L., and their children, all resided in the home, with their mother, the owner of the home. Mr. Jackson first assaulted M.L. when he was still residing with them. He would frequently watch the children and on one such occasion he blindfolded all the children and told them that he would stick something in their mouths and they would guess what it was.  The first two children exclaimed that they tasted whip cream. However, M.L. said that whatever was stuck in her mouth was slimy and nasty and did not taste like whip cream. Mr. Jackson assaulted M.L. approximately four or five more times before he moved out, each time blindfolding her and forcing her to engage in acts of oral sex in which he would ejaculate in her mouth. Mr. Jackson moved out around July 5, 2005. When the occasion would arise on Mr. Jackson's visits with Misty, he would assault M.L. in the same fashion. The last of these incidents occurred in December of 2005. From the dated photographs taken from Mr. Jackson's cell phones, Mr. Jackson last assaulted M.L. on December 24, 25, and 26 of 2005. However on these occasions, he took incriminating photographs of M.L. with his penis in her mouth. He forced her to look up at the camera and told her to smile. On December 26, 2005, he dragged M.L. into the basement laundry room, took her blindfold off, and told that he would hurt her the way he used to beat up her aunt if she told anyone. He made her smile at the camera, ejaculated into her mouth, and told her that he was going to throw her clothes away. She spit his semen onto the floor and Mr. Jackson threw her five dollars. M.L. estimated that Mr. Jackson has assaulted her at least twenty-five times.
{¶ 10} Detective Michael Krafcik ("Detective Krafcik") was assigned to the case on December 28, 2005, the day after H.L. had discovered M.L.

was being sexually assaulted and had made a report to the police. At approximately 10:30 a.m. Detective Krafcik, Elizabeth Lewis, a sexual assault investigator from TCCSB, and Sergeant Merrick went to the residence of the victim, where they met with M.L., H.L., and M.L.'s grandmother, who as the owner of the house granted them permission to enter and search.

{¶ 11} The following day, December 29, 2005, Detective Krafcik sought and was issued a warrant for Mr. Jackson's arrest. Subsequently, on December 30, 2005, Mr. Jackson was arrested at the Pit-Stop Drive-Thru gas station at the intersection of Youngstown Road and Kenilworth in Warren.

{¶ 12} Two cell phones were found on his person, both of which met M.L.'s and her family's description of the phones. M.L. had told the police Mr. Jackson took photographs of her with his two cell phones and that he always kept them with him. However, before obtaining a search warrant to search the contents of the phones, when Mr. Jackson was arrested, the police examined the phones and discovered the pictures of the minor with a penis in her mouth. The police then obtained a search warrant on January 4, 2006, to search the contents of the two cell phones further.

{¶ 13} Special Agent Lee Lerussi testified that the six images were taken from Mr. Jackson's cell phones, one on December 24, 2005, two on December 25, 2005, two on December 26, 2005, and one undated and unknown.

{¶ 14} Mr. Jackson testified in his own defense. He denied engaging in oral sex with M.L. Further, he denied taking any of the pictures with his cell phone. Mr. Jackson testified that on the dates of the last few incidents he did leave the cell phones unattended at the house when he left for brief periods of time. He then testified that he was present at the home when the pictures were taken, as evidenced by the time and date stamp on the photographs. The court overruled Mr. Jackson's renewed Crim.R. 29 motion for acquittal, finding that the state had submitted sufficient evidence on all the counts charged.

{¶ 15} The jury returned a verdict of guilty on April 19, 2006, for all counts of the indictment, finding him guilty of five counts of rape and five counts of pandering obscenity involving a minor.

{¶ 16} Mr. Jackson renewed his Crim.R. 29 motion for acquittal, filing it on April 27, 2006, which the court subsequently denied on June 1, 2006. Mr. Jackson then filed a motion for new trial on June 14, 2006, which the

court denied in a judgment entry filed July 27, 2006. The court had already orally denied the motion at the sexual predator status conference that was held on July 6, 2006. Another sexual predator status conference was held between the parties and the court on September 7, 2006, at which time the court set Mr. Jackson's sexual predator hearing for October 13, 2006.

{¶ 17} Before sentencing Mr. Jackson at a hearing on October 26, 2006, the court informed Mr. Jackson that the court found him to be a sexual predator. The court then deferred the sentencing hearing until the following day, October 27, 2006, at which time Mr. Jackson was sentenced to five consecutive life sentences for each count of rape and five two year sentences for each of the five counts of pandering obscenity involving a minor. However, one of the two year sentences was ordered to be served consecutively to the life sentences, while the remaining four were to be served concurrent to the overall consecutive sentence. Mr. Jackson was then notified of his duties to register as a sexual predator and that he may be subject to post-release control after his release. Mr. Jackson filed a timely notice of appeal on December 1, 2006, appealing his judgment entry of sentence of November 3, 2006. *State v. Jackson,* 2007 WL 4481412, *1-4, Case No. 2006-T-0123 (Ohio App. 11 Dist. Dec. 21, 2007).

## II. Procedural History

### A. Conviction

On January 18, 2006, the Trumbull County Grand Jury indicted Jackson on five counts of rape and five counts of pandering obscenity, all involving a minor under age thirteen. (Doc. No. 5-1, Exh. 1.) Jackson filed a motion to suppress all evidence obtained as a result of a search warrant issued on January 4, 2006, involving photographs residing on his confiscated cell phones. After a hearing, the court denied the motion. (Doc. No. 5-1, Exhs. 2-4, Tr. 47-48.)

In April, 2006, a jury found Jackson guilty on all counts. (Doc. No. 5-1, Exhs. 5-14.) In June, 2006, Jackson, relying on purported new evidence, requested a new trial. (Doc. No. 5-1, Exh. 15.) The trial court declined to grant Jackson's request. (Doc. No. 5-1, Exh. 17.)

In a judgment journalized on November 3, 2006, Jackson was sentenced to consecutive life terms on counts one through five and two years on each of counts six through ten. (Doc. No. 5-1, Exh. 18.) Count six was ordered to be served consecutive to the life sentences, while the remaining four were to be served concurrent to each other and concurrent with the sentences imposed in counts one through six. *Id.*

### B. Direct Appeal

Jackson, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eleventh District ("state appellate court") raising the following assignments of error:

1. The trial court erred in denying appellant's motion to suppress evidence obtained by the state.

2. The trial court erred and abused its discretion by not granting appellant's motion for a new trial.

3. The trial court erred and abused its discretion by not allowing a file from the Children Services Board into evidence.

4. The Appellant's convictions are against the manifest weight of the evidence.

(Doc. No. 5-1, Exh. 19-20.) On December 26, 2007, the state appellate court affirmed. (Doc. No. 5-1, Exh. 22.)

On February 11, 2008, Jackson, through counsel, filed a timely Notice of Appeal in the Ohio Supreme Court setting forth the following propositions of law:

1. A trial court commits reversible error by denying a motion to suppress evidence where a defendant is searched and evidence is seized by police without a warrant.

2. A trial court commits reversible error when it does not grant a defendant's motion for new trial when new evidence is found that creates reasonable doubt that the defendant committed the crime accused.

3. A trial court abuses its discretion by not allowing evidence from a Children Services Board file that supports the contention that someone other than a defendant committed the crime.

4. A trial court's adjudication of a criminal defendant as a sexual predator is against the manifest weight of the evidence where the record reveals that all current psychological tests indicate, at worst, a 36% chance of the defendant re-offending.

5. The Appellant's convictions are against the manifest weight of the evidence.

(Doc. No. 5-1, Exhs. 23-24.) On June 4, 2008, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 5-1, Exh. 26.)

**C. Federal Habeas Petition**

Jackson, through counsel, filed the instant Petition for a Writ of Habeas Corpus asserting the following grounds for relief:

> **Ground One**: The trial court erred and violated Petitioner's constitutional rights by denying a motion to suppress evidence where a defendant is searched and evidence is seized by police without a warrant.
>
> **Ground Two**: The trial court erred and violated Petitioner's constitutional rights by denying a motion for new trial when new evidence is found that creates reasonable doubt that the defendant committed the crimes accused.
>
> **Ground Three**: The trial court erred and violated Petitioner's constitutional rights by not allowing evidence from a Children Services Board file that supports the contention that someone other than a defendant committed the crimes.
>
> **Ground Four**: Petitioner's convictions are constitutional violations as they are against the manifest weight of the evidence.

(Doc. No. 1.) Respondent argues that these grounds are either noncognizable in federal habeas, procedurally defaulted, or without merit.

On April 5, 2010, Magistrate Judge White issued his Report and Recommendation (Docket #14), recommending that the Petition be denied. The Magistrate found Grounds One and Four to be noncognizable in Federal habeas; Grounds Two and Three to be procedurally defaulted; and, further, that Grounds Two and Three fail on the merits.

On April 19, 2010, Petitioner filed his Objections to the Magistrate's Report and Recommendation. (Docket #15.)

**Standard of Review for a Magistrate Judge's Report and Recommendation**

The applicable standard of review for a magistrate judge's report and recommendation

-7-

depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo. FED. R. CIV. P. 72(b) states:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

## Conclusion

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo*. After careful evaluation of the record, this Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own. The Report and Recommendation (Docket #14) is hereby ADOPTED in its entirety. The Petition for Writ of Habeas Corpus filed by Allan Jackson, Jr., pursuant to 28 U.S.C. § 2254, is hereby DENIED.

## Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which

specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484. Where the petition has been denied on a procedural ground without reaching the underlying constitutional claims, the court must find that the petitioner has demonstrated that reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right *and* that reasonable jurists could debate whether the district court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated in the Magistrate Judge's Report and Recommendation, a reasonable jurist could not conclude that dismissal of the Petition is in error or that Petitioner should be permitted to proceed further. Further, to the extent that Petitioner's claims were also rejected on the merits, reasonable jurists could not find the assessment of Petitioner's constitutional claims to be debatable or wrong. Accordingly, the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

                                           s/Donald C. Nugent
                                           DONALD C. NUGENT
                                           United States District Judge

DATED: May 12, 2010